IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA

v.

**MAGDIEL OMAR BEAUCHAMP-PELLOT [3]**,
    Defendant.

Criminal No. 16-597 (JAG)

### REPORT AND RECOMMENDATION

On November 16, 2021, Defendant Magdiel Omar Beauchamp-Pellot ("Beauchamp-Pellot") pleaded guilty to (a) one count of conspiracy to import five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(A)(ii) and 21 U.S.C. § 846, and (b) one count of conspiracy to knowingly conduct financial transactions involving the proceeds of unlawful sales of controlled substances in violation of 18 U.S.C. § 1956(a) and 18 U.S.C. § 1956(h). Docket ("Dkt.") 302. This court sentenced him to 150 months' imprisonment for his offenses. Dkt. 326. His full sentence term is set to expire on March 20, 2031. Dkt. 348 at 7. Before the court is his motion for compassionate release. Dkt. 344. The government has opposed. Dkt. 354. This matter was referred to me for a report and recommendation. Dkt. 347. For the following reasons, the court should **DENY** Beauchamp-Pellot's motion for compassionate release.

### BACKGROUND

Beauchamp-Pellot is a 43-year-old male born on September 11, 1980. Dkt. 314 at 2. At age 23, he trespassed into a victim's dwelling and took personal property after intimidating the victim with a loaded firearm. Dkt 314 at 30. For this conduct he was convicted on three counts at the state level – one count of attempted robbery and two Puerto Rico Weapons Act violations – and was sentenced to a total of ten years in prison. *Id*. at 29. His sentence was suspended and he was released on probation. *Id*. He was subsequently arrested twice for firearm violations, but the

charges were dismissed in both cases. *Id*. at 31 ¶ 114-115. He has no other known criminal history. *Id*. at 29-31.

In the present case, Beauchamp-Pellot was sentenced to 150 months for two offenses – conspiracy to import controlled substances and money laundering. Dkt. 326. He was sentenced at an offense level of 37 and criminal history category of II, indicating a guideline sentencing range of 235-293 months. Dkt. 327 at 1. He served as one of two principal operators of a drug trafficking conspiracy, coordinating the importation of multi-kilogram quantities of narcotics. Dkt. 314 at 26 ¶ 82, 48 ¶ 180. He personally travelled between Puerto Rico and the eastern United States to track and coordinate shipments. *Id*. at 19 ¶ 52. The conspiracy transported an estimated 3,881.25 kilograms of cocaine from Puerto Rico to the eastern United States, representing a value of over $10 million. *Id*. at 18 ¶ 47. Beauchamp-Pellot laundered money earned from drug trafficking through corporate entities, bank accounts, and real estate purchases. *Id*. at 26 ¶¶ 83-84. He is currently incarcerated at USP Atlanta. Dkt. 344 at 2.

Beauchamp-Pellot claims eligibility for compassionate release due to his medical conditions and his rehabilitation while incarcerated. In September 2018, he was diagnosed with high blood pressure (hypertension) and prescribed 5mg of Almodipine and 10mg of Lisinopril, increased to 10mg and 20mg, respectively, around the end of 2020. Dkt. 356 at 3. He was later diagnosed with high cholesterol and prescribed 20mg of Prevastatin. *Id*. In April 2024, he suffered a "severe episode of high blood pressure" where he was monitored by an attendant nurse and not allowed to leave until his blood pressure lowered. *Id*. at 3-4. He worries that his medical conditions are being inadequately treated at USP Atlanta and is concerned about his heightened risk of severe illness from increasing COVID-19 infections. *Id*. at 4.

Beauchamp-Pellot asserts that his post-conviction rehabilitation has been "truly extraordinary." Dkt. 344 at 5. He claims to have taken educational courses, worked various prison jobs, and received "considerable training" while incarcerated. *Id*. He does not provide further elaboration or details concerning his rehabilitation. However, in November 2023, he was subject to disciplinary sanctions while in prison for possessing a hazardous tool. Dkt. 348 at 7.

## STANDARD OF REVIEW

A court may grant "compassionate release" to a defendant under 18 U.S.C. § 3582(c)(1)(A). That statute provides, in relevant part, that:

> the court, upon motion of the Director of the Bureau of Prisons or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)    extraordinary and compelling reasons warrant such a reduction
> ...
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A); *see also* U.S.S.G. § 1B1.13 (sentencing guidelines policy statement on compassionate release). Under this statute, a district court may consider a motion for compassionate release under three circumstances: (1) the motion is filed by the Director of the Bureau of Prisons ("BOP"); (2) the motion is filed by defendant after he exhausts all his administrative rights to appeal BOP's refusal to bring a motion on his behalf; or (3) the motion is filed by defendant 30 days after he requested the BOP to petition for compassionate release on his behalf. 18 U.S.C. § 3582(c)(1)(A).

Once a motion for compassionate release is properly before the court, the court must then determine if the defendant is eligible for release. The statutory language quoted above requires that the defendant show that "extraordinary and compelling reasons warrant" a reduction in his sentence, that the court consider the factors set forth in 18 U.S.C. § 3553(a) to the extent applicable, and that the reduction be "consistent" with the Sentencing Commission's applicable policy statements. *Id*. The Sentencing Commission's policy statement regarding compassionate release mirrors the statutory language and adds the requirement that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *See* U.S.S.G. § 1B1.13. A defendant's potential dangerousness is a paramount concern as a court weighs the decision to grant early release. *United States v. Gil*, 484 F.Supp.3d 19, 22 (D.N.H. 2020); *see also United States v. Bradshaw*, No. 1:15-CR-422, 2019 U.S. Dist. LEXIS 225627, 2019 WL 7605447, at *7 (M.D.N.C. Sept. 12, 2019) (explaining the overlap between the dangerousness requirement in the compassionate release policy statement and the § 3553(a)(2)(C) requirement that courts consider the need to protect the public).

In short, a court may reduce a term of imprisonment under the compassionate release provision if it finds: (1) extraordinary and compelling reasons warrant the reduction; (2) the defendant will not be a danger to the safety of any other person or the community; and (3) the sentencing factors outlined in 18 U.S.C. § 3553(a) weigh in favor of a reduction. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13; *see also United States v. Sapp*, No. 14-CR-20520, 2020 U.S. Dist. LEXIS 16491, 2020 WL 515935, at *2-5 (E.D. Mich. Jan. 31, 2020); *United States v. Willis*, 382 F. Supp. 3d 1185, 1187-88 (D.N.M. 2019). The defendant has the burden of showing that he or she is entitled to a sentence reduction. *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020). The court has "broad discretion in deciding whether to grant or deny a motion

for sentence reduction." *United States v. Gileno*, 448 F. Supp. 3d 183, 186 (D. Conn. 2020) (internal quotation marks omitted).

## DISCUSSION

This court has jurisdiction under 18 U.S.C. § 3582(c)(1)(A). For the reasons stated below, Beauchamp-Pellot's motion for compassionate release should be denied.

### A.    Exhaustion of Administrative Remedies

Before a motion for compassionate release can be brought before the court, a petitioner must exhaust administrative remedies. This is achieved if the motion is filed (1) by the Director of the BOP; (2) by the defendant after he exhausts his administrative rights to appeal BOP's refusal to bring a motion on his behalf; or (3) by the defendant 30 days after requesting BOP to petition for compassionate release on his behalf. 18 U.S.C. § 3582(c)(1)(A). The defendant has the burden of showing that he exhausted administrative remedies prior to bringing his claim before the court. *See United States v. Wells*, No. 13-151, 2020 U.S. Dist. LEXIS 139425, 2020 WL 4504445 at *10 (E.D. La. Aug. 5, 2020). The First Circuit takes the position that exhaustion of administrative remedies is merely a "mandatory claim processing rule" rather than a jurisdictional requirement. *United States v. Texeira-Nieves*, 23 F.4th 48 (1st Cir. 2022). As a result, the government can waive this requirement "either expressly or by failing to raise it as a defense." *United States v. Pabon-Mandrell*, No. 07-121, 2023 U.S. Dist. LEXIS 229346, 2023 WL 8866598 at *12 (D.P.R. Dec. 22, 2023).

There is no direct evidence in the record showing Beauchamp-Pellot sent a request to his warden to petition for compassionate release on his behalf. He claims to have sent a request in March 2023 and to have received a reply confirming receipt. Dkt. 356 at 4-5. He claims that no record was available to submit to the court because the internal electronic mail system used by

BOP deletes messages after 60 days and does not allow inmates to print out or save messages. *Id*. The government notes Beauchamp-Pellot's failure to provide evidence of his request but does not otherwise argue that he failed to exhaust administrative remedies. Dkt. 354 at 1.

It is Beauchamp-Pellot's burden to show that he made a proper request to the warden and to document it in a way that creates a record reviewable by the court, and he did not do so. *See Wells*, 2020 U.S. Dist. LEXIS 139425 at *10. However, the government arguably waived this issue by failing to raise it "as a defense." *Pabon-Mandrell*, 2023 U.S. Dist. LEXIS 229346 at *12. The government's brief focuses on the merits of Beauchamp-Pellot's claim and it is not clear whether they intended to contest his exhaustion of administrative remedies. *See* Dkt. 354. Regardless, this issue is not dispositive since Beauchamp-Pellot's claim fails on the merits, as will be discussed below.

    **B.**    **Defendant's Eligibility for Compassionate Release**

Beauchamp-Pellot fails to demonstrate his eligibility for compassionate release. A court may reduce a term of imprisonment under the compassionate release provision if: (i) extraordinary and compelling reasons warrant the reduction; (ii) the defendant will not be a danger to the safety of any other person or the community; and (iii) the sentencing factors outlined in 18 U.S.C. § 3553(a) weigh in favor of a reduction. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. I shall address each of these requirements in turn.

    *i.*    **Extraordinary and Compelling**

Beauchamp-Pellot asserts that his medical conditions and rehabilitation constitute "extraordinary and compelling" circumstances warranting his release. However, his arguments are unpersuasive.

What qualifies as "extraordinary and compelling reasons" are outlined in U.S.S.G. § 1B1.13(b). These include severe medical conditions, age, family circumstances, abuse while imprisoned, and unusually long sentences. *Id*. Section 1B1.13(b)(5), a catchall provision, indicates that any other circumstance of similar gravity to those outlined elsewhere in Section 1B1.13(b), or a combination of such circumstances, may rise to the level of "extraordinary and compelling." And per Section 1B1.13(d), "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason," but "may be considered in combination with other circumstances in determining whether and to what extent a reduction…is warranted."

First, Beauchamp-Pellot's medical conditions do not rise to the level of "extraordinary and compelling." Courts generally view compassionate release due solely to a medical condition as "an extraordinary and rare event" granted only in cases of notable severity. *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019). Numerous courts have found that high blood pressure and high cholesterol do not qualify as sufficiently severe conditions on their own to warrant compassionate release. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) ("[N]early half of the adult population in the United States suffers from hypertension. And roughly 12% of Americans suffer from high cholesterol. Thus, we cannot say that either of those conditions makes Thompson's case "extraordinary.").

Beauchamp-Pellot also expresses concern over inadequate treatment of his conditions at USP Atlanta. Section 1B1.13(b)(1)(C) indicates that "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death" may count as "extraordinary and compelling." But by his own admission, Beauchamp-Pellot was evaluated and diagnosed by health professionals, has been attended by nurses during health episodes, and is receiving medication to

address his conditions. Dkt. 356 at 3-4. Beauchamp-Pellot has not demonstrated that his conditions require medical care beyond what he is currently receiving at USP Atlanta.

With respect to his COVID-19 concerns, courts in this circuit have observed that "[t]he COVID-19 Pandemic…no longer constitutes the emergency that it once did." *United States v. Doe*, No. 18-10360, 2023 U.S. Dist. LEXIS 105316, 2023 WL 4053022 at *1 (D. Mass. June 16, 2023). Recent court opinions have refused to recognize risks from COVID-19 as extraordinary and compelling, even in conjunction with other health conditions. *See, e.g.*, *id.*; *United States v. Rodriguez-Soler*, No. 10-164-4, 2024 U.S. Dist. LEXIS 70289, 2024 WL 1596853 at *13-14 (D.P.R. April 12, 2024). Safe and effective COVID-19 vaccinations are now widely available. *Doe*, 2023 U.S. Dist. LEXIS 105316 at *4. While it is unclear from the record whether Beauchamp-Pellot has been vaccinated for COVID-19, "if he has refused vaccination, he should not benefit from failing to take proper precautions to reduce his risk." *Id*. All told, Beauchamp-Pellot fails to show that his medical conditions rise to the level of "extraordinary and compelling."

Second, Beauchamp-Pellot's post-conviction rehabilitation does not qualify as an extraordinary and compelling circumstance warranting his release. The Sentencing Guidelines specifically state that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." U.S.S.G § 1B1.13(d). Rehabilitation is only considered "in combination with other circumstances." *Id*. As discussed above, Beauchamp-Pellot's medical conditions present a weak argument for extraordinary and compelling circumstances. He has provided limited evidence of his rehabilitation beyond asserting his commitment to education, "considerable training," and performance of "menial prison jobs." Dkt. 344 at 5. And the extent of his rehabilitation is undercut by the fact that he was subject to disciplinary sanctions for his conduct as recently as November

2023. Dkt. 348 at 7. In sum, his health conditions and rehabilitation do not qualify as extraordinary and compelling circumstances.

### ii. Danger to Community

The next factor for consideration is whether Beauchamp-Pellot would pose a danger to the safety of any other person or to the community if released. For the reasons below, I conclude that his release would pose a danger.

There is no one test that courts rely upon when determining if a defendant poses a danger to the safety of the public at large; instead, courts look to various factors that suggest the defendant is more or less likely to reoffend. Factors that courts have considered when deciding if a defendant will pose a danger if they are released, among others, include the defendant's history of prior offenses, particularly if the prior offenses were violent or involved weapons; other evidence of violence; whether the defendant's prior offenses harmed the public in some other way; any disciplinary issues with the defendant while in prison; whether the defendant has pursued educational opportunities while incarcerated; the security level of the defendant's place of incarceration; any health problems faced by the defendant that might curtail the defendant's behavior upon release; and release conditions.[1]

Several of the factors above tilt in Beauchamp-Pellot's favor. He claims to have participated in education, trainings and prison jobs while incarcerated. Dkt. 344 at 5-6. He appears

---

[1] *See, e.g.*, *United States v. Nuzzolilo*, 517 F. Supp. 3d 40, 44 (D. Mass. 2021) (denying the defendant's motion due to his history of dealing drugs and returning to the drug trade after prior convictions, and his history of making threats of violence despite apparently never carrying them out); *United States v. Perkins*, 480 F. Supp. 3d 360, 367-69 (D.N.H. 2020) (finding the defendant unlikely to be a danger to anyone after considering his prior federal offenses; the defendant's history of cooperating with law enforcement; his good behavior in prison, including solely minor disciplinary infractions and participation in educational programs; and proposed release to home confinement under strict supervision); *United States v. Bradshaw*, No. 1:15-CR-422, 2019 U.S. Dist. LEXIS 225627, 2019 WL 7605447, at *7-8 (M.D.N.C. 2019) (reducing the defendant's sentence after finding that he led a law-abiding life until his mid-sixties, he had no history of violence, his health problems would significantly limit his activities, his brother and daughter had agreed to provide care for him upon release, and the three years he had already served would deter recidivism).

to have the support of his family, who can assist his transition after prison. *Id*. He appears to have some assets with which to support himself post-release. *See* Dkt. 314 at 36-45. And his health conditions do not appear severe enough to limit his ability to work, as evidenced by his performance of jobs while in prison. Dkt. 344 at 5-6.

Other factors weigh toward a finding that Beauchamp-Pellot would pose a danger if released. He had a prior conviction in 2004 for armed robbery and was a high-level operator in the drug trafficking conspiracy underlying his current conviction. Dkt. 314 at 29-30 ¶ 108, 48 ¶ 180. His prior conviction involved a threat of severe violence – a loaded, unregistered firearm was used to intimidate a victim. *Id*. Firearm offenders are in general more likely to recidivate than non-firearm offenders. *See United States v. Whindleton*, No. 2:13-cr-00064, 2020 U.S. Dist. LEXIS 232373, 2020 WL 7265844, at *3 (D. Me. 2020) ("Firearms offenders in general recidivate at a significantly higher rate than non-firearms offenders...Firearms offenders also recidivate more quickly after they are released from incarceration, and they are more likely to commit more serious crimes"). He was recently subject to disciplinary sanctions for possessing a hazardous tool. Dkt. 348 at 7. Last, he is also only 43 years old and there is no evidence that his health conditions would significantly limit his ability to recidivate.

After considering the above factors, I conclude that Beauchamp-Pellot's early release poses a danger to the safety of others and to the community.

### iii. 18 U.S.C. § 3553(a) Factors

The third issue the court must consider is whether the sentencing factors in 18 U.S.C. § 3553(a) weigh in favor of reducing Beauchamp-Pellot's sentence. The Section 3553(a) factors cover a broad variety of considerations, including the nature and circumstances of the offense, the defendant's personal history, the guideline sentencing ranges, the need to avoid unwarranted

sentencing disparities, and the need to provide restitution to any victims. *See* 18 U.S.C. § 3553(a). Section 3553(a) also specifies that the sentence imposed should reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes by the same defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Id*. In the context of a sentence reduction, the amount of time already served and the time remaining are both relevant considerations. *See, e.g., Nuzzolilo*, 517 F. Supp. 3d 40 at 44 (time served and remaining "very significant" when weighing the Section 3553(a) sentencing factors).

Most of the factors, if applicable, weigh against Beauchamp-Pellot's release. With respect to the nature and circumstances of the offense and the history and characteristics of the defendant, he was sentenced for two very serious crimes. He was a leader in the drug trafficking conspiracy and performed sophisticated money laundering to disguise the proceeds. Dkt. 314 at 28 ¶ 97, 48 ¶ 180. He is also a repeat offender, having been convicted of an armed robbery charge in 2004. *Id*. at 29-30 ¶ 108. With respect to his sentencing range, Beauchamp-Pellot has already received a significantly shorter sentence than his offense level and criminal history would suggest – his guideline sentencing range was 235-293 months, whereas he received 150 months. *See* Dkt. 327 at 1, Dkt. 326 at 2. Last, while "the statute's main concern is minimizing national[] sentencing disparities among criminals who commit like crimes…legitimate concerns may arise if a judge sentences similarly situated coconspirators or codefendants to inexplicably disparate terms." *United States v. Romero*, 906 F.3d 196, 211 (1st Cir. 2018) (internal quotations omitted). Co-defendant Jose Maldonado-Villafane served as the other half of Beauchamp-Pellot's drug trafficking scheme and was sentenced to 156 months, Dkt. 292 at 2, compared to Beauchamp-

Pellot's 150 months. Maldonado-Villafane had a slightly higher offense level (39) but no prior criminal history. Dkt. 248 at 26 ¶ 93, ¶ 97. Therefore, there is no strong justification for reducing Beauchamp-Pellot's sentence to bring it into line with that of his co-defendant.

Beauchamp-Pellot has served less than half of his total sentence – he was arrested on September 19, 2018 and has been incarcerated for just over 70 months. Dkt. 314 at 2. Assuming good time credit, he has served just over half of the total time he will serve. Dkt. 348 at 7; Dkt. 356 at 2. Time served may factor positively if the defendant has served half of his sentence or more. *See, e.g.*, *United States v. Gil*, 484 F. Supp. 3d 19, 25 (D.N.H. 2020) (noting that the defendant had already served approximately half of his sentence, assuming good-time credit, in deciding to reduce his sentence). However, Beauchamp-Pellot's imposed sentence was already substantially shorter than the sentencing guideline range and he has served significantly less than half of the minimum of the guideline range. *See United States v. Ilarraza*, 460 F. Supp. 3d 120, 121 (D. Mass. 2020) (denying the defendant compassionate release while noting that "[d]efendant will have served only two-thirds [] of the imposed sentence, [] less than half of the statutory maximum and substantially lower than the guideline range."). Time served thus does not weigh one way or the other for Beauchamp-Pellot.

Only the seventh factor tilts in Beauchamp-Pellot's favor. Since his current conviction did not involve violence and his connection to individual victims is remote, there is no strong need to provide restitution. The fifth factor, which addresses a defendant's potential danger to any person or to the community, is analyzed above and tilts against Beauchamp-Pellot. I conclude that the § 3553(a) sentencing factors weigh against his release.

## CONCLUSION

For the foregoing reasons, I recommend that the court **DENY** Beauchamp-Pellot's motion for compassionate release.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within two weeks of the date of this order. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 9th day of August 2024.

s/ *Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge